UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| ROGER HOLSEY, JR., | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | No. 5:13-CV-207-DCR-HAI |
| v. | ) | |
| | ) | |
| JACK CONWAY, Attorney General, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On July 2, 2013, pro se Petitioner Roger Holsey, Jr. filed a petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. D.E. 1. On July 12, 2013, the Court ordered Respondent to respond to Petitioner's Petition within 60 days. D.E. 2. After two extensions, Respondent timely filed a Response on November 8, 2013. D.E. 8. Petitioner filed his Reply on December 16, 2013 (D.E. 10), rendering his Petition ripe for analysis. For the reasons that follow, the Court **RECOMMENDS** that the Petition be **DENIED** and that no certificate of appealability should issue.

### I. BACKGROUND

Petitioner is currently serving a term of probation of four years in lieu of a suspended one-year sentence pursuant to an August 2, 2010 judgment of the Fayette Circuit Court entered following Petitioner's conditional guilty plea. *See* D.E. 8-4. Petitioner pled guilty to trafficking in marijuana, less than eight ounces, and possession of drug paraphernalia, second or greater offense. *Id.* The Court of Appeals of Kentucky described the facts of Petitioner's case as follows:

> In June 2009, Detective J.S. Curtsinger, a Lexington Fayette Urban County Police Officer, was informed by another officer, Detective Brislin, that a "concerned citizen" suspected that narcotics were being sold from a residence located at 3685 White Pines Drive in Lexington, Kentucky. In conducting surveillance of the residence, Detective Brislin observed a white Dodge Magnum that he determined was registered to Appellant or a Kathleen Parks. Detective Curtsinger recalled seeing the same vehicle parked on numerous occasions at 460 Newbury Way, another residence located less than a mile from White Pines Drive.
>
> On July 13, 2009, Detective Curtsinger conducted a trash pull at the Newbury Way residence and found marijuana stems, rolling papers, an empty plastic baggie contain[ing] marijuana residue, and mail addressed to Christina Hamm, Appellant's wife. The following day, Detective Curtsinger executed a search warrant on the White Pines residence and discovered not only marijuana but a large mushroom growing operation. On July 20, 2009, a second trash pull at the Newbury Way residence resulted in marijuana stems, numerous baggies containing marijuana residue, rolling papers, and mail addressed to Appellant. A subsequent criminal background investigation indicated that Appellant was on parole from 1999 convictions for first-degree robbery, first-degree burglary, possession of marijuana, and possession of drug paraphernalia. In addition, Christina Hamm had a prior conviction for trafficking in a controlled substance.
>
> Based upon the above information, Detective Curtsinger obtained and executed a search warrant on the Newbury Way residence on July 20, 2009. Officers discovered marijuana, baggies with marijuana residue, digital scales, and other drug paraphernalia. Appellant was subsequently indicted for trafficking in marijuana within a [sic] 1000 yards of a school, possession of drug paraphernalia, second offense or greater, and for being a second-degree persistent felony offender. Following a May 2010 hearing, the trial court denied Appellant's motion to suppress all evidence found during the search. Appellant thereafter entered a conditional guilty plea to an amended charge of trafficking in marijuana less than eight ounces, as well as possession of drug paraphernalia. Pursuant to a plea agreement, the PFO charge was dismissed and Appellant was sentenced to one year imprisonment, probated for a period of four years.

*Holsey v. Commonwealth*, No. 2010-CA-001620-MR, at 2–3 (Ky. Ct. App. Mar. 30, 2012) (unpublished); D.E. 8-7 at 2–3.

Petitioner appealed, pro se, to the Kentucky Court of Appeals, which affirmed his conviction. *See Holsey*, No. 2010-CA-001620-MR, at 9; D.E. 8-7 at 9. In his brief to the Kentucky Court of Appeals, Petitioner claimed that 1) the affidavit to the search warrant of his home did not establish probable cause, resulting in a violation of Petitioner's Fourth Amendment

rights as well as his rights under Section 10 of the Kentucky Constitution; 2) the use of a no-knock warrant was unreasonable; 3) the search warrant was not issued by a neutral and detached magistrate; 4) the search is not saved by the good faith exception to the exclusionary rule, and; 5) the trash pulls at his residence did not rehabilitate the affidavit to the search warrant, which lacked probable cause. *See* D.E. 8-5 at 13. Petitioner then appealed to the Supreme Court of Kentucky, which denied discretionary review. *Holsey v. Commonwealth*, No. 2012-SC-000256-D (Ky. Feb. 13, 2013); D.E. 8-8.

On July 2, 2013, Petitioner filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (D.E. 1) with an accompanying memorandum (D.E. 1-1) asserting six claims, each of which is addressed below.

## II. DISCUSSION

In general, a state prisoner has a statutory right to collaterally attack his conviction or sentence. *See West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001) (stating that 28 U.S.C. § 2254 provides state prisoners with a statutory right to file a habeas corpus petitioner). A state prisoner may seek federal habeas corpus relief on the ground that he is being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A petitioner must first exhaust his state court remedies before instituting a proceeding pursuant to 28 U.S.C. § 2254, unless "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a habeas petitioner must fairly present the substance of his federal claims to the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). This ensures that state courts, which have an equal obligation to protect the

constitutional rights of defendants, "have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 275 (1971).

## A. Standard of Review and Deference Due to State Court Decisions

The Anti-Terrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA) applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "difficult to meet . . . and highly deferential standard[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (internal quotation marks omitted). All findings of fact by the state court are presumed to be correct, and can be rebutted only by "clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737–38 (6th Cir. 2003), *cert. denied* 543 U.S. 1080 (2005); 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts are also given substantial deference under AEDPA. The Supreme Court has recently reiterated that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. ___, 133 S. Ct. 1990, 1992 (2013) (per curiam) (internal quotation marks omitted). It has also recently reiterated that "circuit precedent

does not constitute clearly established Federal law." *Parker v. Matthews*, 567 U.S. ___, 132 S. Ct. 2148, 2155 (2012) (internal quotation marks omitted).

### B. Full and Fair Litigation

Petitioner first contends that his Fourth and Fourteenth Amendment rights were violated when the Kentucky Supreme Court denied his motion for discretionary review, thereby denying the opportunity to fully and fairly litigate his Fourth Amendment claims. D.E.1 at 5; D.E. 1-1 at 5. Petitioner advances the argument that the Sixth Circuit's interpretation of *Stone v. Powell*, 428 U.S. 465, 481–82 (1976) as explained in *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977) is impermissibly broad. D.E. 1-1 at 5. Under his narrower standard, Petitioner claims, the Kentucky Supreme Court denied Petitioner full and fair litigation of his Fourth Amendment claims. *Id.*

Unless "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant," a federal court may not grant a state petitioner habeas relief when he presents unexhausted claims. 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a habeas petitioner must fairly present the substance of his federal claims to the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). If a petitioner would be barred from pursuing relief in the state courts, "his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195–96 (6th Cir. 1995).

Petitioner did not raise this claim in the Kentucky courts. Were this Court to dismiss Petitioner's Petition with instructions to exhaust this claim, the remedy available to Petitioner in the Kentucky courts would be to file a motion for collateral relief under Kentucky Rule of Criminal Procedure 11.42 ("RCr 11.42"). However, the then-highest court in Kentucky has

ruled that "[a] proceeding under RCr 11.42 does not provide an arena in which all claims of the violation of constitutional rights shall be tested. Only those violations which may have had a bearing on the legality or fundamental fairness *of the trial* may be considered." *Dupin v. Commonwealth*, 404 S.W.2d 280, 281 (Ky. 1966) (emphasis added). Kentucky's procedural law providing for only discretionary (as opposed to of right) review by the Supreme Court of Kentucky of criminal appeals did not affect the legality or fundamental fairness of Petitioner's trial. Thus, Petitioner's claim would not be cognizable in a motion under RCr 11.42, and he has no recourse at this point in the courts of the Commonwealth of Kentucky.

The Supreme Court held in *Stone v. Powell* that a federal court is not required to grant habeas relief to a prisoner in state custody who was given the opportunity for full and fair litigation by the state courts. *Stone*, 428 U.S. at 481–82. As Petitioner acknowledges, the Sixth Circuit held in *Moore v. Cowan* that a state court does not need to fully explain its decision as to a constitutional search and seizure claim; rather, it must only "take cognizance of the constitutional claim and render a decision in light thereof." *Moore*, 560 F.2d at 1302. Petitioner argues that the Sixth Circuit should have adopted the reasoning of the Tenth Circuit in *Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir. 1978), specifically that an opportunity for full and fair consideration requires an opportunity to present the Fourth Amendment claim at issue, a full and fair evidentiary hearing as contemplated by *Townsend v. Sain*, 372 U.S. 293 (1963), and "at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble*, 583 F.2d 1165. Under the *Gamble* standard, Petitioner claims, he was not afforded an opportunity for full and fair consideration by the Kentucky Supreme Court.

The Court first notes that the law of the Sixth Circuit is controlling and that the law of the Tenth Circuit is merely persuasive. Thus, when there are differences between the two, the Court

is obligated to follow the law enunciated by the Sixth Circuit. The rule in *Moore* has been affirmed several times since it was first announced in 1977. *See, e.g.*, *Good v. Berghuis*, 729 F.3d 636, 638 (6th Cir. 2003) ("We . . . [subscribed] to what has become the majority rule in the circuits—that opportunity means opportunity—and concluding that the state court need do no more than take cognizance of the constitutional claim and render a decision in light thereof." (citation and internal quotation marks omitted)); *Riley v. Gray*, 674 F.2d 522, 525 (6th Cir. 1982) (applying the ruling in *Moore*). The Sixth Circuit has not abandoned the rule in *Moore*, and thus this Court is bound by that rule.

Petitioner has had a full and fair opportunity to present his Fourth Amendment claims to the Kentucky courts. He filed a motion to suppress at the trial court level, was afforded a hearing, and reserved the issue for appeal when his motion was denied. D.E. 1-1 at 3 ("Following denial of Motion to Suppress, on June 11, 2010, the Petitioner entered a conditional guilty plea according to RCr 8.09 expressly reserving the right to appeal the Court's suppression ruling."). Petitioner then exercised his right to appeal under section 115 of the Constitution of Kentucky. *See* D.E. 8-5. In his brief to the Kentucky Court of Appeals, Petitioner clearly raised all of the Fourth Amendment claims that he has raised in his Petition. *Compare* D.E. 8-5, *and* D.E. 1. Following the Kentucky Court of Appeals' ruling in favor of the Commonwealth (*see* D.E. 8-7), Petitioner filed a motion for discretionary review by the Kentucky Supreme Court, which was denied. D.E. 8-8. Petitioner applied for relief as to his Fourth Amendment claims in every Kentucky court available to him, and each court has rendered a decision.

While having had many opportunities to do so, the United States Supreme Court has not held a discretionary appellate review system to be unconstitutional. Indeed, the Supreme Court utilizes a discretionary review system. Sup. Ct. R. 10 ("Review on a writ of certiorari is not a

matter of right, but of judicial discretion."). Additionally, "[t]he Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions." *Halbert v. Michigan*, 545 U.S. 605, 610 (2005). Under federal law, Petitioner was not entitled as a matter of right to appeal to the Kentucky Supreme Court.

Because Petitioner was afforded a full and fair opportunity to pursue his Fourth Amendment claims, and because of the binding precedent of *Moore*, this ground for relief fails.

### C. Fourth Amendment Claims

Petitioner's Grounds 2–4 assert Fourth Amendment violations and were exhausted in the Kentucky state courts. Ground 2 alleges that the affidavit to the search warrant for Petitioner's residence did not establish probable cause. D.E. 1 at 7; D.E. 1-1 at 7–11. Ground 3 is that there was no reasonable basis for the issuance of a "no-knock" warrant because there were no exigent circumstances. D.E. 1 at 8; D.E. 1-1 at 11–15. Finally, Petitioner's Ground 4 is that because the search warrant was issued by a judge who had previously prosecuted Petitioner on unrelated charges some ten years earlier, the search warrant was not signed by a neutral and detached magistrate. D.E. 1 at 10; D.E. 1-1 at 15–17.

Each of these grounds was addressed by the Kentucky Court of Appeals in its Opinion affirming the Fayette Circuit Court's order denying Petitioner's suppression motion. *Holsey v. Commonwealth*, No. 2010-CA-001620-MR, at 3, 7, 8 (Ky. Ct. App. Mar. 30, 2012) (unpublished); D.E. 8-7 at 3, 7, 8 ("Appellant first argues that the affidavit supporting the search warrant for his residence was deficient in that it failed to establish probable cause. . . . Appellant next argues that police had insufficient grounds to request a no-knock warrant. . . . Finally, Appellant complains that the search warrant was defective because Judge Bouvier, who signed the warrant, was not a neutral or detached authority as required by the Fourth Amendment.").

The Court notes that throughout his Petition and Reply, Petitioner argues that his rights were violated under Kentucky state law as well as federal law. Federal habeas courts are not empowered to adjudicate claims based on state law; they are empowered to address claims that a petitioner is in state custody in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254. To the extent that Petitioner claims that his rights under Kentucky state law were violated, those claims are not properly before the Court, and the Court therefore will not entertain them.

Federal courts will not address a Fourth Amendment claim during habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976). The Sixth Circuit, applying *Stone*, enunciated a two-step inquiry for determining whether a Fourth Amendment claim may be heard on habeas review in *Machecek v. Hofbauer*, 213 F.3d 947 (6th Cir. 2000). While that case involved a claim of an illegal arrest, the Court spoke of the two-part inquiry it undertook in terms of Fourth Amendment claims generally, and thus the case applies to Petitioner's Fourth Amendment claims. *See Machecek*, 213 F.2d at 952. The Court described the inquiry as: 1) "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim," and 2) "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.*

Petitioner challenged the legality of the search and seizure prior to trial. The trial court held an evidentiary hearing and denied the motion to suppress. Petitioner then raised the issue on direct appeal. The Kentucky Court of Appeals reviewed Petitioner's Fourth Amendment claims and concluded that Petitioner was not entitled to relief. While Petitioner challenges the state

9

courts' decisions, he has not shown that the Kentucky court procedures were flawed such that he was unable to properly litigate his Fourth Amendment claims. "[T]he record clearly shows [Petitioner] received all the process he was due." *Id.* Accordingly, his claims concerning the validity of the search and seizure are not cognizable on habeas review pursuant to *Stone v. Powell*.

However, even if these claims were cognizable on habeas review, they would each fail because of the substantial deference due to state court determinations of fact and law under AEDPA. Petitioner does not argue that the fact determinations made by the Kentucky state courts were incorrect, but instead argues that the Kentucky state courts rendered decisions that were contrary to or involved an unreasonable application of established Supreme Court precedent.

In Ground 2, Petitioner alleges that the affidavit to the search warrant for his residence did not contain facts sufficient to establish probable cause. D.E. 1-1 at 7–11. The Kentucky Court of Appeals correctly cited *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983) for the rule of law that probable cause determinations in the context of search warrants are made in light of the totality of the circumstances. *Holsey*, No. 2010-CA-001620-MR, at 4; D.E. 8-7 at 4. The Kentucky Court of Appeals discussed the facts of Petitioner's case, including the anonymous tip which started the investigation, the frequent presence of Petitioner's vehicle at both the White Pines Drive and the Newbury Way residences, and the trash pulls at the Newbury Way residence. *Holsey*, No. 2010-CA-001620-MR, at 6; D.E. 8-7 at 6. The Court agreed with Petitioner that if only the first two pieces of evidence were included in the affidavit for the search warrant, it might not have established probable cause. *Holsey*, No. 2010-CA-001620-MR, at 6; D.E. 8-7 at 6. However, the Kentucky Court of Appeals also noted it had "no difficulty"

agreeing with the trial court's finding "that the discovery of illegal contraband in trash placed outside the curtilage was, in and of itself, sufficient to create probable cause of criminal activity." *Holsey*, No. 2010-CA-001620-MR, at 6; D.E. 8-7 at 6.

"It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Illinois v. Gates*, 462 U.S. 213, 244 (1983). In other words, while the anonymous tip on its own may not have provided a basis for probable cause, the independent investigation undertaken by Detective Curtsinger provided corroboration which lent the anonymous tip reliability. While Petitioner asserts in his Reply that this was not enough to comply with *Gates* (D.E. 10 at 5), the finding of the Kentucky Court of Appeals that these facts, under the totality of the circumstances, constituted probable cause to search Petitioner's residence is not contrary to, or an unreasonable application of, clearly established federal law. The Kentucky Court of Appeals correctly enunciated the holding in *Gates*, and applied it to the facts of Petitioner's case in a reasonable manner. Thus, Ground 2 fails on the merits.

In Ground 3, Petitioner argues that his criminal history and the presence of "miniscule amounts of marijuana residue in the garbage" did not constitute reasonable suspicion as to the exigencies of danger or potential destruction of evidence, and thus the issuance of a no-knock warrant was improper. D.E. 1-1 at 12–13. The Kentucky Court of Appeals cited a Kentucky Supreme Court opinion (*Adcock v. Commonwealth*, 967 S.W.2d 6 (Ky. 1998)) that correctly cites *Wilson v. Arkansas*, 514 U.S. 927, 933 (1995) for the rule of law that the Fourth Amendment requires that police officers knock on the door of a residence to be searched and identify themselves before forcing their way into the premises. *Holsey*, No. 2010-CA-001620-MR, at 7; D.E. 8-7 at 7. The Kentucky Supreme Court in *Adcock* also correctly cited *Richards v.*

*Wisconsin*, 520 U.S. 385, 394 (1997) for the rule of law that police may dispense with the knock-and-identify requirement if the law enforcement officers have reasonable suspicion that certain exigent circumstances, such as danger, futility, or potential for destruction of evidence, are present. *See Holsey*, No. 2010-CA-001620-MR, at 7; D.E. 8-7 at 7. The Kentucky Court of Appeals quoted *Adcock*, cited to *Wilson*, and expressly acknowledged the exception in *Richards*. Applying these rules, the Court of Appeals found no reason to disgree with the trial court that because of Petitioner's prior conviction for robbery involving a gun (implicating danger as an exigent circumstance) and the fact that any drugs in the residence could be easily and quickly destroyed, a no-knock warrant was proper. *Holsey*, No. 2010-CA-001620-MR, at 7–8; D.E. 8-7 at 7–8.

Petitioner argues that a no-knock warrant was inappropriate because Detective Curtsinger had no reason to believe Petitioner or his wife were armed or that evidence would have been destroyed if law enforcement announced their presence before entering his residence. D.E. 1-1 at 13–14. Given the confluence of Petitioner's criminal history (which includes at least one crime involving a firearm), his wife's criminal history (which includes a drug trafficking conviction, and drug traffickers frequently possess one or more firearms), and the presence of marijuana in Petitioner's trash, it is not unreasonable that the Kentucky Court of Appeals found that Detective Curtsinger had reasonable suspicion as to the exigencies of danger and destruction of evidence, and hence that a no-knock warrant was proper. This decision was not contrary to, or an unreasonable application of, *Richards*.

As an additional matter, Petitioner claims that "the real purpose of the no knock request was to make sure that Judge Bouvier (who issued the warrant) recalled Petitioner and that he had been convicted of robbery and burglary in 1999, making it more likely that the Judge would sign

the warrant/affidavit." D.E. 10 at 12. Petitioner has offered no factual basis for this assertion, and even were it accurate, it does not affect whether there was reasonable suspicion to believe an exigency was applicable to the situation such that a no-knock warrant was appropriate. Thus, Ground 3 fails.

Finally, in Ground 4, Petitioner claims that the warrant to search his residence was not signed by a neutral and detached magistrate. D.E. 1-1 at 15–17. The Kentucky Court of Appeals correctly stated that the Fourth Amendment requires the judge or other authority signing a warrant to be neutral and detached. *Holsey*, No. 2010-CA-001620-MR, at 8; D.E. 8-7 at 8. It agreed with the Fayette Circuit Court that "the mere fact that the issuing judge served as the prosecutor in a previous case against [Petitioner] does not indicate that the judge was anything other than impartial and unbiased." *Holsey*, No. 2010-CA-001620-MR, at 8; D.E. 8-7 at 8.

That ruling is consistent with Supreme Court precedent holding that officers and others ***actively involved*** in the investigation or prosecution may not issue warrants. *See Johnson v. United States*, 333 U.S. 10, 13–14 (1948) (reasoning that warrants must be issued by a neutral and detached authority rather than "the officer engaged in the often competitive enterprise of ferreting out crime"); *Coolidge v. New Hampshire*, 403 U.S. 443, 449–53 (1971) (holding that a warrant issued by the Attorney General, who would be prosecuting the case, was not issued by a neutral and detached authority). Petitioner does not allege, nor is there evidence in the record, that Judge Bouvier was actively involved in the case against Petitioner. Thus, the Kentucky Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law, and Ground 4 fails.

### D. Claims Not Addressed by the Kentucky Court of Appeals

Grounds 5 and 6 were raised by Petitioner in his brief to the Kentucky Court of Appeals, but no mention of these grounds is in the Kentucky Court of Appeals decision.[1] *Compare* D.E. 8-5 at 21–24, *with Holsey v. Commonwealth*, No. 2010-CA-001620-MR (Ky. Ct. App. Mar. 30, 2012) (unpublished), *and* D.E. 8-7. The Kentucky Court of Appeals did not merely deny the grounds for relief summarily, but instead made no mention of them. In dicta, the Supreme Court has stated that in such a case, a petitioner is entitled to "an unencumbered opportunity to make his case before a federal judge." *Johnson v. Williams*, 568 U.S. __, 133 S. Ct. 1088, 1097 (2013). Grounds 5 and 6 unequivocally alleged violations of federal law. Thus, the Court reviews these claims de novo. *See Burton v. Renico*, 391 F.3d 764 (6th Cir. 2004) ("When a state court has not adjudicated a claim on the merits, we review the issue de novo.").

### 1. Ground 5 – Good Faith Exception to the Exclusionary Rule

The exclusionary rule prohibits prosecutors from using evidence obtained in violation of a defendant's Fourth Amendment rights at trial. *Mapp v. Ohio*, 367 U.S. 643, 654 (1961). However, there is a good-faith exception to the exclusionary rule: "[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *United States v. Leon*, 468 U.S. 897, 922 (1984). The purpose of the exclusionary rule in the Fourth Amendment context is to deter law enforcement officers from violating a defendant's Fourth Amendment rights. *Brown v. Illinois*, 422 U.S. 590, 599–600 (1975). The good-faith exception is therefore logical, because "penalizing [an] officer for the magistrate's error, rather

---

[1] The issues were likewise not addressed in the Commonwealth's brief to the Kentucky Court of Appeals. *See* D.E. 8-6.

than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 920–21.

Petitioner states that the anonymous tipster who contacted Detective Brislin included no information about Petitioner, there was otherwise no basis for probable cause in the search warrant affidavit, and Detective Curtsinger knew that there was not probable cause to support the warrant. D.E. 1 at 11; D.E. 1-1 at 17–18. Thus, concludes Petitioner, the warrant does not fall within the good faith exception to the exclusionary rule. D.E. 1 at 11; D.E. 1-1 at 18.

As stated above, the exclusionary rule prohibits prosecutors from using evidence obtained in violation of a defendant's Fourth Amendment rights, one of which (and the one that Petitioner is alleging was violated) is that a warrant must be supported by probable cause. U.S. Const. amend IV. Thus, if a warrant is supported by probable cause, application of the exclusionary rule is unnecessary. "The test for probable cause is not reducible to precise definition or quantification." *Florida v. Harris*, 568 U.S. __, 133 S. Ct. 1050, 1055 (2013). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238.

As discussed above in Part II.C, the search warrant was validly issued. Because the warrant was supported by probable cause, the exclusionary rule is inapplicable, and Ground 5 fails.

### 2. Ground 6 – Trash Pulls

Finally, Petitioner contends that the two trash pulls conducted at his residence were in violation of his Fourth Amendment rights, as well as his rights under Section 10 of the Kentucky Constitution, and therefore could not serve as the basis for probable cause in the affidavit for the

search warrant to search his residence. D.E. 1 at 11; D.E. 1-1 at 18–22. In his Petition, Petitioner does not develop his Fourth Amendment argument beyond a mere assertion that his rights were violated, and he does not allege that his garbage receptacles were not outside of his curtilage awaiting collection. *See* D.E. 1-1 at 1–2 (stating that the receptacle was "at the curb" for each trash pull), 18–22. The trial court "expressly found during the suppression hearing that . . . [the] trash [was] placed outside the curtilage." D.E. 8-7 at 6. The Supreme Court has held that warrantless search and seizure of garbage left for collection outside the curtilage is permissible. *California v. Greenwood*, 486 U.S. 35, 36 (1988) ("The issue is here is whether the Fourth Amendment prohibits the warrantless search and seizure of garbage left for collection outside the curtilage of a home. We conclude . . . that it does not.").[2] Clearly established federal law holds that Petitioner is not entitled to relief on Ground 6.

Petitioner develops his state law claim by discussing *State v. Crane*, 2011-NMCA-061, 149 N.M. 674, 254 P.3d 11; *State v. Granville*, 2006-NMCA-098, 140 N.M. 345, 142 P.3d 933; and, briefly, *State v. Hempele*, 576 A.2d 793 (N.J. 1990). In his Reply, Petitioner argues that this Court should follow the lead of New Mexico and Washington and "depart from the Fourth Amendment jurisprudence." D.E. 10 at 6 (citing *State v. Granville*, 2006-NMCA-098, 140 N.M. 345, 142 P.3d 933; *State v. Boland*, 800 P.2d 1112 (Wash. 1990)). These cases are all premised on state court interpretations of their own constitutions, *not* the United States Constitution. Federal law is clear that "[i]ndividual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution." *Greenwood*, 486 U.S. at 43.

---

[2] Although Petitioner asks this Court to apply the reasonable expectation of privacy analysis established in *Katz v. United States*, 389 U.S. 347 (1967), *Greenwood* applied that very test. *See Greenwood*, 486 U.S. at 39–40. Thus, Petitioner's reliance upon *Katz* is misplaced.

Petitioner claims that Section 10 of the Kentucky Constitution is similar to the New Mexico and New Jersey constitutions in that it provides greater privacy protections than the Fourth Amendment, which ought to include a prohibition on warrantless trash pulls. D.E. 1-1 at 18–22.[3] This Court declines to extend privacy interests not contained in the Fourth Amendment to Petitioner using Kentucky law as a vehicle when the Kentucky Supreme Court "has consistently held that the protections of Section 10 of the Kentucky Constitution are no greater than those of the federal Fourth Amendment." *Dunn v. Commonwealth*, 360 S.W.3d 751, 758 (2012).

### E. Certificate of Appealability

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its

---

[3] Portions of Petitioner's memorandum are lifted wholesale from his brief to the Kentucky Court of Appeals, with the consequence that "this Court is asked to recognize that the contents of an individual's garbage reveals evidence of a person's most private and intimate affairs." D.E. 1-1 at 22. This, of course, the Court cannot do, because it cannot overrule *Greenwood*.

procedural ruling." *See Slack*, 529 U.S. at 484. None of the claims presents a close issue involving a violation or unreasonable application of clearly established federal law, or any other avenue of relief under section 2254. No reasonable jurist would find the assessments above to be wrong or debatable; thus, no Certificate of Appealability should issue.

### III. CONCLUSION AND RECOMMENDATION

Having reviewed each of Petitioner's grounds for section 2254 relief, the Court concludes that Petitioner has failed to make the requisite showing that would entitle him to any relief. Therefore, the Court **RECOMMENDS** that Petitioner's Petition for habeas corpus (D.E. 1) be **DENIED.** The Court further **RECOMMENDS** that no Certificate of Appealability should issue.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 31st day of December, 2013.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge